IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Marcella Louise Bacorn,           :

         Plaintiff,               :

    v.                            :      Case No.  2:14-cv-23

                                  :      JUDGE ALGENON L. MARBLEY
Commissioner of Social Security,         Magistrate Judge Kemp


         Defendant.               :


REPORT AND RECOMMENDATION

I.  Introduction

     Plaintiff, Marcella Louise Bacorn, filed this action seeking
review of a decision of the Commissioner of Social Security
denying her applications for disability insurance benefits and
supplemental security income.  Those applications were filed on
December 20, 2010, and alleged that Plaintiff became disabled on
June 9, 2006.

     After initial administrative denials of her claim,
Plaintiff was given a video hearing before an Administrative Law
Judge on August 1, 2012.  In a decision dated September 5, 2012,
the ALJ denied benefits.  That became the Commissioner's final
decision on November 13, 2013, when the Appeals Council denied
review.

     After Plaintiff filed this case, the Commissioner filed the
administrative record on March 25, 2014.  Plaintiff filed her
statement of specific errors on April 28, 2014, to which the
Commissioner responded on July 31, 2014.  Plaintiff filed a reply
on August 18, 2014, and the case is now ready to decide.

II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 33 years old at the time of the administrative hearing and who has a high school education, testified as follows. Her testimony appears at pages 44-58 of the administrative record.

At the time of the hearing, Plaintiff was working in a program through which she received cash assistance. She washed dishes and mopped floors two or three days per week at a senior nutrition center. Before that, she worked at a Wal-Mart as a stocker and cashier. Neither job required lifting more than five pounds. She stopped working due to complications with pregnancy.

Plaintiff said she could no longer work due to shortness of breath, high blood pressure, and stress. She used an inhaler for her breathing problems. She also wore a knee brace on her left knee to keep it from shifting out of place. Walking was easier on her knee than standing. She could stand about an hour and could lift 25 to 30 pounds. Her anxiety and depression were being treated by medication. She did not have problems getting along with other people but did have issues with concentration and attention.

On a typical day, Plaintiff cared for her six-year-old son and usually took a two-hour nap. She was able to do laundry, sweep, and put away dishes. She also took walks outside and did some grocery shopping. Crowds of unfamiliar people made her nervous.

### III.  The Medical Records

The medical records in this case are found beginning on page 308 of the administrative record. Plaintiff's sole assignment of error relates to an evaluation done by Dr. Ford, so the Court will summarize that report here, and will refer to other parts of the medical evidence only as necessary.

Dr. Ford is a neuropsychologist who was asked to do a consultative examination by the Ohio Bureau of Vocational

-2-

Rehabilitation.  The evaluation was done in July, 2012, which was prior to the administrative hearing, but the ALJ did not have the report when the hearing was held.

Dr. Ford noted, as background information, that Plaintiff had been receiving mental health treatment for four years and was taking psychotropic medication.  Her life stressors included her husband's death in 2008 and her son's medical and health issues. She also was suffering from medical problems and physical limitations.  She told Dr. Ford that she had limited leisure activities and almost no involvement with anyone but her family. She was able to care for her son but needed help with transportation and finances.

Dr. Ford administered a number of tests.  Based on test results, he concluded that she was functioning in the borderline range of intellectual functioning, and that she could not process complex or abstract information.  Dr. Ford stated that Plaintiff's prognosis for future job training or employment was "poor at best" and that she would not do well in a production-type setting or one requiring rapid-paced work.  He thought she would require support at the start of any new activity or work task including "frequent and direct supervision."  Dr. Ford did not think she had a major depressive disorder but he did diagnose dysthymia.  He concluded that she could "learn a routine, non-professional job with support and adequate time to adjust to the position."  He recommended job coaching for a job that could be learned by doing, with time to practice the requirements.  (Tr. 498-503).

IV.  <u>The Vocational Testimony</u>

Patricia Posey was the vocational expert in this case.  Her testimony begins on page 58 of the administrative record.

Ms. Posey testified that Plaintiff's position as a cashier was a semiskilled light job requiring frequent reaching and

handling, fingering, occasional stooping, and frequent interaction with the public. The stock clerk job was medium and semiskilled and required occasional stooping, climbing, reaching, and fingering, as well as frequent use of the arms.

Ms. Posey was then asked some questions about a hypothetical person who had Plaintiff's educational and work history and who could work at the light exertional level. The person could not climb ladders, ropes or scaffolds, but could climb ramps or stairs occasionally and could also occasionally stoop, kneel, crouch, crawl, and balance. The person also had to avoid concentrated exposure to moving machinery and unprotected heights and could understand and follow only simple instructions in an environment that did not have strict production quotas or require more than occasional interaction with the public. According to Ms. Posey, someone with those limitations could do light jobs such as night cleaner, non-postal mail clerk or mail sorter, and merchandise marker. The person could also perform sedentary jobs like food sorter, folder, and document preparer. Someone who could not crouch, crawl, or kneel could do all of those jobs except night cleaner. However, someone off task for even half an hour at unscheduled times could not be employed. The same was true for someone who would miss four to six days of work each month.

### V.  The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 19-34 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status of the Social Security Act through December 31, 2011. Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity after her alleged onset date of June 9, 2006. Next, the ALJ determined that Plaintiff

-4-

had severe impairments including obesity, chronic fatigue, sublaxation (sic) of the patella of the left knee, major depression, anxiety disorder, and borderline intellectual functioning.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level, but she could not climb ladders, ropes, or scaffolds, and could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs.  She also had to avoid concentrated exposure to moving machinery or unprotected heights and she was limited to understanding, remembering, and carrying out simple instructions in a work environment without strict production quotas and which involved only occasional interactions with the public.  The ALJ found that, with these restrictions, although Plaintiff could not perform her past relevant work, she could do the light and sedentary jobs identified by the vocational expert.  The ALJ further found that such jobs existed in significant numbers in the regional and national economies.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI.  Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises only this issue: the ALJ failed to include in his residual functional capacity finding certain restrictions found by Dr. Ford even though the ALJ gave great weight to Dr. Ford's opinion.  This claim is evaluated under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial

-5-

evidence, shall be conclusive. . . ."  Substantial evidence is
"'such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion'"  Richardson v. Perales, 402
U.S. 389, 401 (1971) (quoting Consolidated Edison Company v.
NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere
scintilla.'"  Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th
Cir. 1976).  The Commissioner's findings of fact must be based
upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435
(6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th
Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir.
1984).  In determining whether the Commissioner's decision is
supported by substantial evidence, the Court must "'take into
account whatever in the record fairly detracts from its weight.'"
Beavers v. Secretary of Health, Education and Welfare, 577 F.2d
383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB,
340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human
Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court
would reach contrary conclusions of fact, the Commissioner's
decision must be affirmed so long as that determination is
supported by substantial evidence.  Kinsella v. Schweiker, 708
F.2d 1058, 1059 (6th Cir. 1983).

     Plaintiff's argument, stated briefly, is that the ALJ erred
by assigning great weight to Dr. Ford's evaluation, but then
failing to incorporate the conclusions reached by Dr. Ford into
the residual functional capacity finding.  In particular, Dr.
Ford said that Plaintiff would need a significant amount of
support, including job coaching, in order to be able to learn
even a simple job, but the ALJ made no findings about these
restrictions and did not incorporate them into either his
residual functional capacity finding or into the hypothetical
question asked to Ms. Posey, the vocational expert.  In order to
evaluate this argument, it is helpful to begin by reviewing the

-6-

ALJ's treatment of Dr. Ford's report in some detail.

The ALJ began his discussion of Plaintiff's psychological impairments by noting some treatment that she received in 2009 and 2010.  His summary indicated that Plaintiff was generally able to care for herself and her son during that time frame and that Dr. Davis, who managed Plaintiff's medications, noted that she did not appear eligible for disability benefits.  In 2011, a consultative examiner concluded that Plaintiff suffered from anxiety and depression and stated that her "work abilities need to be correlated with overwhelming social, medical, and personal problems along with problems related to anxiety and depression." See Tr. 314.  As 2011 progressed, Plaintiff continued to be optimistic about being able to go back to work, and her counseling sessions were shortened.  However, the records from that time on showed, in the ALJ's words, "up and down findings." (Tr. 29).  The ALJ then summarized Dr. Ford's report as well as a report from Plaintiff's counselor, Ms. Strillion, to the effect that Plaintiff was not currently able to work.

The ALJ devoted several paragraphs of his decision to the expert opinions.  He did not give much weight to the first consultative examiner's opinion, although it is not entirely clear to what extent that examiner found Plaintiff to be limited due to psychological impairments.  He then said this:

> On July 8, 2012, Dr. Ford evaluated the claimant ... and asserted that the claimant was able to learn a routine non-professional job with support and adequate time to adjust.  He opined that she was employable despite her emotional distress and any learning problems....  The undersigned affords this opinion great weight; his findings are supported by the claimant's mental health care and physical treatment records, as well as her ability to care for her disabled child and still work a part-time job.

Tr. 31-32.  Plaintiff faults this analysis as being either a

selective reading of Dr. Ford's opinion, or, if his opinion really was given great weight, a failure to incorporate the entirety of the opinion into the ALJ's analysis of what Plaintiff was capable of doing from a psychological standpoint.

The Commissioner counters this argument by arguing that the ALJ was not required to accept all of Dr. Ford's opinion and, in fact, did not. The Commissioner then contends that the residual functional capacity contained in the ALJ's decision is essentially the same as that postulated by Dr. Ford, and any discrepancies are adequately explained by the record and by the ALJ's discussion of the remaining evidence about psychological limitations.

Plaintiff appears to making two somewhat different arguments concerning how the ALJ handled Dr. Ford's opinion. The first is the contention that the ALJ erred because "he neglected to consider all aspects of Dr. Ford's opinion and to include all aspects of that opinion into the RFC restrictions." Statement of Errors, Doc. 10, at 9. That is an argument that the ALJ was required to accept every limitation found in Dr. Ford's opinion; stated in terms of the applicable standard of review, it is an argument that the ALJ did not have a substantial basis for rejecting those aspects of Dr. Ford's opinion that might be inconsistent with the performance of substantial gainful employment. The second is the contention that the ALJ actually did accept all of the restrictions in Dr. Ford's opinion but then made what amounted to a mechanical error by not incorporating them into the hypothetical question posed to the vocational expert, which could only have been done by way of some supplemental proceeding such as interrogatories, a method which Plaintiff suggests the ALJ should have utilized.

The second argument is fairly easily disposed of. The ALJ stated that he gave "great weight" to Dr. Ford's opinion, but not

-8-

controlling weight.  He clearly did not accept those parts of it which are inconsistent with an RFC to work, and he made a clear RFC finding that appears to be at least somewhat different from Dr. Ford's opinion, read fairly and in its entirety. Consequently, the first argument - which is the one the Commissioner has responded to - is the argument the Court must address.

The Court assumes, for purposes of discussion, that some of the comments or observations made by Dr. Ford - particularly those indicating that Plaintiff would need a good bit of direct supervision or job coaching in order to learn even a simple job - may not be consistent with employment other than, as Plaintiff suggests, in a sheltered workshop environment.  The ALJ clearly did not conclude that Plaintiff needed those types of accommodations.  Is there substantial support for this conclusion?

The Court agrees with the Commissioner that this finding has substantial support in the record.  It is a fair inference, and one drawn by the ALJ, that the demands of Plaintiff's son's medical situation presented the single largest barrier to her employment.  Further, as the ALJ noted, Plaintiff retained the mental ability both to care for her son, needing assistance with finances and transportation, and to do the part-time work (65 hours per month) necessary to obtain cash assistance.  The notes of Plaintiff's treating counselor show that her condition was variable but often good, and the ALJ rejected a more restrictive opinion from her counselor - a decision that Plaintiff does not challenge here.  Overall, the record supports a finding that Plaintiff was not as restricted as found by Dr. Ford.  Since he was not a treating source, the ALJ did not need to provide an explanation of why his opinion was not accorded controlling weight, so the failure to do so in explicit terms is not error. See, e.g., Dykes ex rel. Brymer v. Barnhart, 112 Fed. Appx. 463,

468 (6th Cir. Oct. 12, 2004)("the ALJ's failure ... to discuss thoroughly the opinion of a consultative examiner does not warrant reversal").  Consequently, there is no merit in Plaintiff's single assignment of error.

VII.  <u>Recommended Decision</u>

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the defendant Commissioner.

VIII.  <u>Procedure on Objections</u>

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge

-10-