IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MARCELLA LOUISE BACORN,** | : | |
| | : | Case No. 2:14-cv-23 |
| **Plaintiff,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| v. | : | |
| | : | Magistrate Judge Kemp |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER
### I.     INTRODUCTION

This matter is before the Court for consideration of Plaintiff's Objections, (Doc. 20), to the Magistrate Judge's November 10, 2014 Report and Recommendation, (Doc. 18), recommending that the Court overrule Plaintiff's Statement of Errors, (Doc. 10), and that judgment be entered in favor of Defendant Commissioner of Social Security.  Plaintiff entered objections on November 24, 2014. (Doc. 20). Upon independent analysis by the Court, and for the reasons set forth below, the Court **ADOPTS** the Report and Recommendation. Plaintiff's Objections are **OVERRULED.**

### II.     BACKGROUND
#### A.  Introduction

Plaintiff filed this action seeking review of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. Plaintiff filed an application for disability insurance on December 20, 2010.  After her initial administrative denials of her claim, Plaintiff was given a video hearing before an Administrative Law Judge ("ALJ") on August 1, 2012. In a decision dated September 5, 2012, the ALJ denied benefits. The ALJ's decision became the Commissioner's final decision on November 13, 2012, when the

1

Appeals Council denied review. After Plaintiff filed this case, the Commissioner filed the administrative record on March 25, 2014. Plaintiff filed her statement of specific errors on April 28, 2014. On November 10, 2014, the Magistrate Judge recommended that Plaintiff's Statement of Errors be overruled and that judgment be entered in favor of the defendant Commissioner.

### B.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff testified that she became disabled on June 9, 2006.  At the time of the administrative hearing, Plaintiff received cash assistance in the monthly amount of $318.00 from Job & Family Services. In order to receive that cash assistance, she had to wash dishes and mop floors at a senior nutrition center.  Prior to receiving cash assistance, Plaintiff worked as a stocker and cashier at Wal-Mart.  Plaintiff testified that she stopped working at Wal-Mart due to pregnancy complications.

At the hearing, Plaintiff testified that she no longer could work due to high blood pressure, shortness of breath, and stress.  Her anxiety and depression were being treated by medication.  On a typical day, Plaintiff cared for her six-year-old son.  She was able to do household chores such as laundry and dishes. Plaintiff also takes walks outside and does some grocery shopping.  She testified that crowds of unfamiliar people made her nervous, and that while she did not have trouble getting along with people, she did have issues with concentration and attention.

### C.  The Medical Records

Plaintiff's sole assignment of error related to an evaluation done by Dr. Ford, so the Magistrate Judge only considered that aspect of the Plaintiff's medical records. Dr. Ford is a neuropsychologist who was asked to do a consultative examination by the Ohio Bureau of Vocational Rehabilitation. That examination was performed prior to the hearing, but the ALJ did

not have the report in hand when the hearing was held. Thus, the ALJ considered Dr. Ford's report when making a final decision, but its findings were not incorporated into the hearing.

Dr. Ford noted that the Plaintiff had been receiving mental health treatment for four years and was taking psychotropic medication. Her life stressors included her husband's death in 2008 and her son's medical and health issues. She also was suffering from medical problems and physical limitations. In her evaluation, Plaintiff told Dr. Ford that she had limited leisure activities and almost no involvement with anyone but her family. She was able to care for her son, but required help with transportation and finances.

Dr. Ford administered a number of tests to the Plaintiff. Based on the test results, he concluded that she was functioning on the borderline range of intellectual functioning, and that she could not process complex or abstract information. Dr. Ford stated that Plaintiff's prognosis for future job training and employment was "poor at best" and that she would not do well in a production-type setting, or one requiring rapid work. He thought she would require support at the start of any new activity or work task including "frequent and direct supervision." While he did not think she had major depressive disorder, he did diagnose her with dysthymia. He concluded that she could "learn a routine, non-professional job with support and adequate time to adjust to the position." He recommended job coaching for a job that could be learned by doing, with time to practice the requirements.

### D. ALJ's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. He also found that Plaintiff had not engaged in substantial

gainful activity[1] following her alleged onset date.  Finally, he determined that Plaintiff had a number of severe impairments. Despite these findings in Plaintiff's favor, however, he concluded that Plaintiff's impairments never met the requirements of the Listing of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Moreover, the ALJ determined that according to the vocational expert's testimony in the case, Plaintiff retained residual functional capacity to perform light work with certain limitations. The ALJ held, therefore, that although Plaintiff could not perform her past relevant work, she could perform jobs identified by the vocational expert, and that such jobs existed in significant numbers in both the national and state economies.  In sum, the ALJ concluded that Plaintiff was not entitled to benefits.  (Doc. 18 at 1-5).

### E.  Magistrate Judge's Report and Recommendation

The Magistrate Judge has recommended that the Court affirm the ALJ's decision. The Magistrate Judge found that Plaintiff's Statement of Specific Errors raised a single issue: that the ALJ erred by assigning great weight to Dr. Ford's evaluation, but then failing to incorporate into its decisions the conclusions. Specifically, Plaintiff argued that even though Dr. Ford opined that Plaintiff would need a significant amount of support, including job coaching, in order to be able to learn to do a simple job, the ALJ made no findings about these restrictions and did not incorporate them into either his residual functional capacity finding or into the hypothetical question asked to Ms. Posey, the vocational expert, during the hearing. Indeed, the record shows that the ALJ did not have the report in hand during the hearing, and so could not have incorporated Dr. Ford's findings into the questioning directed at Ms. Posey.

The Magistrate Judge analyzed in her Report and Recommendation the portion of the ALJ's decision which discussed Dr. Ford's evaluation:

---

[1] "Substantial work activity" is work activity that involves performing significant physical or mental activities.  *See* 20 C.F.R. § 404.1472(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit.  *See* 20 C.F.R. § 404.1572(b) and 416.972(b).

> On July 8, 2012, Dr. Ford evaluated the claimant … and asserted that the claimant was able to learn a routine non-professional job with support and adequate time to adjust. He opined that she was employable despite her emotional distress and any learning problems…. The undersigned affords this great weight; his findings are supported by the claimant's mental health care and physical treatment records, as well as her ability to care for her disabled child and still work a part-time job.

Based on the ALJ's findings regarding Dr. Ford's report, and the Plaintiff's objections to those findings, the Court concluded that Plaintiff appeared to be making two somewhat different arguments. The first argument was that the ALJ was required to accept all limitations found in Dr. Ford's opinion, but erred by failing to do so; stated differently, the ALJ did not have a substantial basis for rejecting those aspects of Dr. Ford's opinion that might be inconsistent with a finding that Plaintiff is capable of performing substantial gainful employment. The second argument was that the ALJ accepted all of the restrictions to gainful employment outlined in Dr. Ford's opinion, but then erred by performing the technical error of failing to incorporate them into its decision.

The Magistrate Judge disposed of the second argument by concluding that the ALJ did not fail to consider portions of the Ford opinion. Instead, the Magistrate Judge determined that the ALJ had considered his entire opinion, but clearly did not accept the portions which were inconsistent with the finding that Plaintiff could perform work in the way the ALJ found she could work.

As to the first argument, the Magistrate Judge assumed, for the purposes of discussion, that Dr. Ford's determination that Plaintiff would need job supervision and coaching in order to learn even a simple job may not be consistent with employment other than, as Plaintiff suggested, in a sheltered workshop environment. As the ALJ's decision did not conclude

5

Plaintiff needed such accommodations, the Magistrate Judge considered whether there was substantial support in the record for this particular finding of the ALJ.

The Magistrate Judge determined that there was. First, the Magistrate found the ALJ drew a fair inference that the demands of Plaintiff's son's disability presented the single largest barrier to her employment. Further, the Magistrate agreed with the ALJ's finding that Plaintiff retained mental ability to care for her son and to perform part-time work to receive cash assistance. The ALJ accepted a treating counselor's finding that her condition was variable but often good, and rejected a more restrictive opinion of the counselor—which the Plaintiff did not contest. Thus, the Magistrate Judge found that there was substantial evidence on the record to support the ALJ's finding that Plaintiff was not restricted in the way Dr. Ford found, and which Plaintiff argued the ALJ had failed to consider. Further, the Magistrate concluded that since Dr. Ford is not a "treating source," the ALJ did not need to provide an explanation of why he did not afford controlling weight to Dr. Ford's opinion concerning Plaintiff's precise limitations to gainful employment. *Citing Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 468 (6th Cir. Oct. 12, 2004). Thus, the Magistrate found no merit to Plaintiff's single assignment of errors.

### III. STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1), this Court, upon objection to the Report and Recommendations, is required to make a *de novo* review of those recommendations to which objection is made.  This *de novo* review, in turn, requires the Court to re-examine all the relevant evidence, previously reviewed by the Magistrate, to determine whether the findings of the Commissioner are supported by "substantial evidence."  *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1053 (6th Cir. 1983); *Gibson v. Secretary of Health, Education and Welfare,* 678 F.2d 653, 654 (6th Cir. 1982).  Upon review, the Court "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without inference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted).

The findings of the Commissioner and proceedings on Claimant's application for social security disability benefits are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter, Commissioner of Social Security*, 246 F.3d 762 (6th Cir. 2001).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

## IV. ANALYSIS

Plaintiff objects to the ALJ's decision on two grounds, and preserved these grounds in her objection to the Magistrate's Report and Recommendation.  (Doc. 10; Doc. 17; Doc. 20). Plaintiff's objections are addressed below.

### A. ALJ's Evaluation of and Weight Given to Consultative Opinion

Plaintiff first asserts that the ALJ misconstrued Dr. Ford's consulting opinion when formulating Plaintiff's residual functional capacity finding. (Doc. 20 at 2). She claims that reversible error resulted because the ALJ "credit[ed] only the part of a consultative examiner's opinion that, taken out of context, skews the entire opinion . . . it is hard to imagine how that can be seen as harmless error." (*Id.* at 3).

In response, Defendant asserts that the ALJ's opinion was consistent with Plaintiff's medical records and her ability to work a part-time job while caring for her disabled child. (Doc. 21 at 2). Defendant maintains that the ALJ provided a reasonable explanation for crediting Dr. Ford's "bottom-line opinion" that Plaintiff remained employable. (*Id.*). Further, Defendant argues that the ALJ did not mischaracterize Dr. Ford's opinion. (*Id.* at 2). The ALJ properly considered and discussed the consulting neuropsychologist's opinion.

When deciding if an individual is disabled under the Social Security Act, the Commissioner makes the ultimate determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). In making this determination, the Commissioner may consider medical opinions of state-sanctioned physicians and medical experts. 20 C.F.R. § 404.1527; SR 96-2P, 1996 WL 374188 (July 2, 1996). Generally, a consultative examiner's medical opinion is entitled to less weight than that of a treating physician. *See* 20 C.F.R. § 404.1527(c) (providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations . . . ."). Further, opinions from medical examiners who have

only examined the claimant on one occasion are not entitled to any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994).

When weighing medical opinion evidence, a consultative examiner's opinion is to be weighed, considering the factors identified in 20 C.F.R. § 404.1527(c). These factors include: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source providing the opinion. 20 C.F.R. § 404.1527(c); *See Nolan v. Comm'r of Soc. Sec.*, No. 2:12-CV-0477, 2013 WL 1787386, at *6 (S.D. Ohio Apr. 25, 2013) *report and recommendation adopted*, No. 2:12-CV-00477, 2013 WL 4831029 (S.D. Ohio Sept. 10, 2013) (citation omitted). "Although the record must contain substantial evidence supporting the rejection or discounting of a consultative examiner's opinion, social security regulations 'require[] ALJs to give reasons for only treating sources.'" *Nolan*, No. 2:12-CV-0477 at *6, quoting *Smith v. Comm'r of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007). However, "when an ALJ completely ignores evidence from non-treating sources that is inconsistent with an ALJ's residual functional capacity assessment a remand may be required." *Nolan*, No. 2:12-CV-0477 at *6.

The ALJ need not address every piece of evidence or explicitly walk through the six factors set out in 20 C.F.R. § 404.1527(c). *Prince v. Astrue*, No. 2:10-cv-00008, 2011 WL 1124989, at *8-9 (S.D. Ohio Jan. 11, 2011) *report and recommendation adopted*, No. 2:10-CV-00008, 2011 WL 1124986 (S.D. Ohio Mar. 25, 2011) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F.App'x 216, 222 (6th Cir. 2010)). Further, an ALJ's failure thoroughly to discuss the opinion of a consultative examiner does not warrant reversal. See *Dykes ex rel. Brymer v. Barnhart*, 112 F.

9

App'x 463, 468 (6th Cir. 2004) (finding it was not of error when an ALJ failed to disregard part of a consultative examiner's opinion).

In this case, Dr. Ford, a consultative examiner, examined Plaintiff in July 2012 and assessed a diagnosis of borderline intellectual functioning and dysthymic disorder.  (Tr. 30). Dr. Ford opined that Plaintiff would need a significant amount of support, including job coaching, in order to learn even a simple job. The ALJ found that Dr. Ford's report showed that "claimant was able to learn a routine non-professional job with support and adequate time to adjust." The ALJ concluded that this meant Dr. Ford believed Plaintiff "was employable despite her emotional distress and any learning problems." The ALJ then found that this finding—that the Plaintiff could do certain work with support and adequate time to adjust, and, thus, she was employable despite emotional distress and any learning problems—should be afforded great weight. Further, the ALJ found that Dr. Ford's opinion was supported by Plaintiff's "mental health care and physical treatment records, as well as her ability to care for her disabled child and still work a part-time job."

Indeed, in its opinion the ALJ also noted that Plaintiff's psychological tests were of questionable validity because of her tendency to over-report or exaggerate her psychological problems.  (*Id.*). Moreover, the ALJ found that Plaintiff was employable despite her emotional distress and any learning problems. (*Id.*).  The ALJ explained that, based on Plaintiff's test scores and objective test performance, Plaintiff appeared capable to learn a routine, non-professional job with adequate time to adjust to the position.  (*Id.*) In addition, the ALJ emphasized that Plaintiff was still able to work a part-time job for case assistance and care for her special needs child, despite Plaintiff's allegations of limitations. (Tr. 30-31).  The ALJ also indicated that Plaintiff has "greatly minimized" her daily activities. (Tr. 31).  He noted that

plaintiff was able to drive, perform household chores, use a computer, and go for walks.  (*Id.*). The ALJ also indicated that Plaintiff received a Global Assessment of Functioning (GAF) score of 60.  (Tr. 32).  While giving these scores "some weight," the ALJ explained that Plaintiff's score was reflective of moderate, but not serious impairment in occupational, social, and educational functioning.  (Tr. 32).

Thus, even if this Court assumes, arguendo, that the ALJ failed entirely to give any weight to Dr. Ford's findings regarding Plaintiff's limitations, and only gave great weight to Dr. Ford's bottom-line finding that Plaintiff could work in some circumstances, this Court finds that this does not amount to reversible error. First, as a consultative, and not treating physician, the ALJ was not required to give controlling weight to Dr. Ford's entire opinion, or to discuss thoroughly the opinion of the consultative examiner. *See Nolan*, No. 2:12-CV-0477 at *6, (quoting *Smith*, 482 F.3d at; *see also Barnhart*, 112 F. App'x at 468. Second, the ALJ's opinion includes substantial evidence supporting the discounting of the portion of Dr. Ford's report which the Plaintiff asks this Court to assign more weight—i.e. his finding that the Plaintiff can only work in a "sheltered workshop environment." *See Nolan*, at *6. Thus, it was not reversible error for the ALJ only to give great weight to some portions of Dr. Ford's opinion.

### B.  The Magistrate Judge's Rationalization of the ALJ's Opinion

Plaintiff asserts that the Magistrate offered impermissible *post hoc* justification for the ALJ's decision not to include restrictions from Dr. Ford's opinion in the ALJ's residual function capacity findings.  (Doc. 20 at 3).  According to Plaintiff, the Magistrate Judge "scoured the record and provided *post hoc* rationale for the ALJ's decision not to include restrictions that flowed form a fully credited medical source opinion in the RFC he found." (*Id.* at 3). The Court disagrees. In ruling on Plaintiff's misconstruing of Dr. Ford's opinion argument, the Magistrate

11

Judge reviewed the ALJ's findings and determined that the ALJ properly found that Plaintiff was not as limited as Dr. Ford found.  As noted above, the ALJ provided sufficient rationale in evaluating Dr. Ford's consultative opinion.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Objections, (Doc. 20), are **OVERRULED** and Court **ADOPTS** the Magistrate Judge's Report and Recommendation. (Doc. 18).  Plaintiff's Statement of Errors, (Doc. 17), is **OVERRULED** and this case is **DISMISSED**. The Clerk is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**


      **/s/ Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**


**DATED:  March 30, 2015**